**In re Christopher T. LAMBERT and Katherine D. Lambert, Debtors.**

**Ronald R. Sticka, Chapter 7 Trustee, Appellant,**

v.

**Christopher T. Lambert and Katherine D. Lambert, Appellees.**

BAP No. 0R–02–1136–MORYK.

Bankruptcy No. 601–61015–FRA7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted by Telephone Conference [1] on July 26, 2002.

Filed Aug. 26, 2002.

Ronald R. Sticka, Eugene, OR, Chapter 7 Trustee pro se.

Before: MONTALI, RYAN and KLEIN, Bankruptcy Judges.

### OPINION

MONTALI, Bankruptcy Judge.

After filing their voluntary Chapter 7 petition,[2] Christopher Todd Lambert and

---

**1.** Appellees did not filed a brief in this appeal and pursuant to a Conditional Order of Waiver issued by the Clerk of the Bankruptcy Appellate Panel, they accordingly waived their right to appear at oral argument.

Katherine Dee Lambert ("Debtors") received a $600.00 check from the United States Treasury pursuant to the Economic Growth and Tax Relief Reconciliation Act of 2001, 26 U.S.C. § 6428 ("the Act"). Appellant Ronald R. Sticka ("Trustee") claimed that the check belonged to the estate, and upon his demand, Debtors surrendered it to him. Later, the bankruptcy court found that the $600.00 check was not, as Trustee claimed, attributable to pre-bankruptcy year–2000 taxes, but was instead either partly or entirely attributable to the post-petition period. It held that only the portion of the money attributable to the pre-petition part of the 2001 tax year belonged to the estate. Consequently, it ordered that the check be returned to Debtors with the instruction that they remit to Trustee the amount belonging to the estate after a determination of their year–2001 tax liability. Trustee appeals from the bankruptcy court's order. We AFFIRM.

## I. FACTS

Debtors filed their voluntary Chapter 7 petition on February 22, 2001 (the "Petition Date"). Subsequently, Congress enacted the Act. On June 27, 2001, in anticipation that Debtors might receive a check under the Act, Trustee sent them a letter titled "NOTICE FOR REBATE TURN-OVER," demanding that they forward any such check (a "Relief Check"). Later, Debtors received a Relief Check from the

Treasury, dated September 21, 2001, in the sum of $600.00.

On October 18, 2001, Debtors filed a motion to compel Trustee to abandon their Relief Check. Debtors argued that because the Act was not enacted until three months after they had filed for bankruptcy, the $600.00 Relief Check was not property of the estate under § 541(a) for, as of the Petition Date, they had no right, claim, or entitlement to the tax credit created by the Act. In the alternative, they argued that even if the bankruptcy court decided that the estate had some legitimate interest in the Relief Check, only a portion of it was attributable to the part of 2001 before the Petition Date. Debtors calculated that portion as 52/365 days or approximately 14.25%.[3]

Trustee filed an opposition to the motion, arguing that the Relief Check was a year–2000 tax refund in the form of a credit in 2001. Because entitlement to the Relief Check was based on Debtors' 2000 tax return, he claimed, "the amount of credit was identifiable by retroactive impact as of the commencement of this bankruptcy case," and therefore the entire Relief Check was estate property.[4] On or about November 14, 2001, before the bankruptcy court heard Debtors' motion to compel abandonment, Debtors delivered the Relief Check to Trustee.

After a hearing, the bankruptcy court issued a Memorandum Opinion on Decem-

2.  Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3.  As noted, Debtors have not appeared on this appeal, nor have they filed a cross-appeal from that portion of the bankruptcy court's order rejecting their argument that the Relief Check is *entirely* a post-petition benefit. Ex-

cept for our general discussion of the Act's meaning, we do not reach that issue.

4.  Trustee argued in the alternative that even if the Relief Check were indeed a year–2001 tax refund, it should be prorated using a slightly different ratio than what Debtors suggested: 53/365 instead of 52/365. Trustee does not raise this issue on this appeal, and we assume without deciding that 52/365 is the correct ratio for any proration.

ber 11, 2001, in which it ruled that the Relief Check was a 2001 benefit, calculated by using 2000's tax return only as a template.[5] It ruled that the Act had no retroactive effect on year–2000 tax liability and the Relief Check was intended to be an advance refund of Debtors' anticipated 2001 tax payments. If Debtors' 2001 tax liability ("2001 Tax Liability") turns out to be $600.00 or more, the bankruptcy court held that the entire $600.00 Relief Check would be an advance year–2001 tax refund. In that situation, because Debtors' Petition Date was in 2001, the $600.00 Relief Check would be estate property only to the extent attributable to the pre-petition part of the 2001 tax year. The bankruptcy court held that the estate's share would then be 14.25% of the Relief Check, which it calculated to be $84.00.[6]

On January 15, 2002, the bankruptcy court issued an order implementing the Memorandum Opinion. In relevant part, the order ruled that the $600.00 Relief Check "is property of the estate only to the extent of the portion attributable to that part of the 2001 tax year prior to February 22, 2001," and it directed Trustee to return the $600.00 Relief Check to Debtors.

Trustee subsequently filed a timely appeal. The bankruptcy court's order has been stayed pending appeal.

## II. ISSUE

Did the bankruptcy court err in interpreting the Act as authorizing an advance refund of year–2001 taxes, rather than a payment attributable to the 2000 tax year?

## III. STANDARDS OF REVIEW

▆▆▆ Whether property is included in a bankruptcy estate is a question of law subject to de novo review. *Moldo v. Clark*

---

5. The bankruptcy court's Memorandum Opinion has been published. *In re Lambert,* 273 B.R. 887 (Bankr.D.Or.2001).

6. The bankruptcy court also held that if Debtors' 2001 Tax Liability turns out to be less than the Relief Check, then only that portion of the Relief Check which represents the 2001 tax refund should be prorated. *Lambert,* 273 B.R. 887. Further, in that situation, because according to the legislative history the difference between the Relief Check and the 2001 Tax Liability (the "Excess Amount") would not need to be repaid to the United States Treasury, the court characterized the Excess Amount as a "new benefit" created post-petition. The bankruptcy court held that because the Excess Amount is a benefit created post-petition and is not rooted in the pre-bankruptcy past, any such amount would belong to Debtors, citing *Sliney v. Schmitz (In re Schmitz),* 270 F.3d 1254 (9th Cir.2001) and *Drewes v. Vote (In re Vote),* 261 B.R. 439 (8th Cir. BAP 2001), aff'd, 276 F.3d 1024 (8th Cir.2002). The bankruptcy court concluded that Trustee should return the Relief Check to Debtors, who should then calculate their tax liability and remit funds to the estate accordingly.

At oral argument the panel questioned Trustee (who was appearing as a pro se litigant) about the foregoing apparently unresolved issues—the need for further calculations, the lack of a specific dollar amount, and the stay of the order directing Trustee to turn over the Relief Check. Our questions were directed at whether the order is final or suitable for review. Trustee advised the panel that although he had not yet received a year–2001 tax return from Christopher Todd Lambert he has received one from Katherine Dee Lambert, and that return shows a liability of more than $600.00. Therefore, we need not address that portion of the Memorandum Opinion dealing with what happens if the 2001 Tax Liability is under $600.00. In addition, although Trustee challenges the appropriateness of pro-rating at all, he does not challenge the bankruptcy court's calculation of $84.00 as the amount if pro-ration applies. Therefore, it appears the bankruptcy court's order is final. To the extent it is interlocutory, we grant leave to appeal. *Wilborn v. Gallagher, (In re Wilborn),* 205 B.R. 202, 206–07 (9th Cir. BAP 1996).

*(In re Clark)*, 266 B.R. 163, 168 (9th Cir. BAP 2001). Whether the Act contemplated a year–2000 or a year–2001 tax refund is a question of statutory interpretation, which we review de novo. *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir.2002).

## IV. DISCUSSION

■ For married individuals filing jointly the Act reduced the income tax rate, effective after December 31, 2000, for the first $12,000 from 15% to 10%.[7] The effect of the reduction is that the tax imposed on the first $12,000.00 is reduced from $1,800.00 to $1,200.00, or by $600.00. *See* 26 U.S.C. § 1(i)(1)(B).

Trustee argues that the Act intended a refund of year–2000 taxes, rather than an advance of the anticipated refund of year–2001 taxes. We disagree.

First, the Act is entitled "Acceleration of 10% income tax rate bracket benefit *for 2001*." 26 U.S.C. § 6428 (emphasis added). Second, subsection (a) of the Act provides for a "credit" against income taxes *"beginning in 2001"* in "an amount equal to 5 percent" of so much of the taxpayer's income as does not exceed an amount that, for Debtors, is $12,000.00. 26 U.S.C. § 6428(a) (emphasis added).[8] Third, subsection (e) of the Act provides:

(e) *Advance Refunds* of Credit *Based on Prior Year Data.*

(1) In General.—Each individual who was an eligible individual [as defined in subsection (c) of the Act] for such individual's first taxable year beginning in 2000 shall be treated as having made a payment against the tax imposed by chapter 1 [26 U.S.C. § 1, Normal Taxes and Surtaxes] for such first taxable year in an amount equal to the advance refund amount for such taxable year.

(2) Advance refund amount.—For purposes of paragraph (1), the advance refund amount is the amount *that would have been allowed as a credit under this section* for such first taxable year if this section (other than subsection (d) and this subsection) had applied to such taxable year.

26 U.S.C. § 6428(e) (emphasis added).[9]

The title of subsection (e) indicates that the Act authorized an advance payment in

---

7. The first subsection of the Act states that "there shall be allowed as a credit against the tax imposed by chapter 1 [26 U.S.C. § 1, Normal Taxes and Surtaxes] for the taxpayer's first taxable year beginning in 2001 an amount equal to 5 percent of so much of the taxpayer's taxable income as does not exceed the initial bracket amount (as defined in section 1(i)(1)(B))." 26 U.S.C. § 6428(a). The section last referred to states that the initial bracket amount for married couples filing jointly for taxable years beginning before January 1, 2008, is $12,000.00. *See* 26 U.S.C. § 1(i)(1)(B)(i). For unmarried individuals, the initial tax bracket amount is half that of married individuals filing jointly, therefore the 2001 tax credit will be $300.00. *See* 26 U.S.C. § 1(i)(1)(B)(iii).

8. *See* footnote 7, supra.

9. Section 6428(2)(e)(2), as quoted, was amended on March 9, 2002. *See* PL 107–147, 107th Cong., 2d Sess. (2002). The amendment included structural changes and the addition of subsection (2)(B). Because the added section only further details the process of calculating the advance refund amount based on 2000 data, it does not affect our analysis. The relevant amended section is quoted in full as follows:

(e) Advance refunds of credit based on prior year data.—

(1) In general.—Each individual who was an eligible individual for such individual's first taxable year beginning in 2000 shall be treated as having made a payment against the tax imposed by chapter 1 [26 U.S.C. § 1, Normal Taxes and Surtaxes] for such first taxable year in an amount equal to the advance refund amount for such taxable year.

year–2001 of anticipated tax refund based on year–2000's data. The refund is "advance" because, upon the Act's enactment, year–2001 taxes were not yet due.[10] Sections (e)(1) and (2) then proceed to lay out how the Relief Check amount is to be calculated. Section (e)(1) assumes that each eligible individual in year–2000 has paid his or her taxes, in an amount equal to the refund such individual would have received if the Act had applied in year–2000. Section (e)(2) then treats that year–2000 amount as the year–2001 advance refund amount. By saying that the advance refund amount is the amount that "would have" been allowed as a credit for tax year 2000 if the Act had applied then, Congress implied that the refund does not apply to tax year 2000. The year–2000 tax information is therefore only used as a way to calculate the year–2001 refund. Together, the two sections indicate that Congress intended to use an individual's year–2000 tax liability to calculate the amount of his or her Relief Check issued in 2001. Therefore, we agree with the bankruptcy court that Debtors' "2000 tax year provides a template for calculating 2001 benefits, and nothing more." *Lambert,* 273

> (2) Advance refund amount.—For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such first taxable year if—
> (A) this section (other than subsections (b) and (d) and this subsection) had applied to such taxable year, and
> (B) the credit for such taxable year were not allowed to exceed the excess (if any) if—
> (i) the sum of the regular tax liability (as defined in section 26(b)) plus the tax imposed by section 55, over
> (ii) the sum of the credits allowable under part IV of subchapter A of chapter 1 [26 U.S.C. § 21] (other than the credits allowable under subpart C thereof, relating to refundable credits).
> 26 U.S.C. § 6428(e) (as amended, March 9, 2002).

B.R. at 890. The Act indeed has no effect on the tax liability for year–2000. While the 5% tax reduction authorized by the Act created an anticipated overpayment of taxes in year–2001, it did not create any overpayment of year–2000 taxes.

Trustee argues on this appeal, as he did before the bankruptcy court, that subsection (e)(1) of the Act defines the refund as one for year–2000 taxes. He argues that the reference in subsection (e)(1) to "the advance refund amount for *such taxable year*" can only mean for tax year 2000. 26 U.S.C. § 6428(e)(1) (emphasis added). We agree that "such taxable year" is tax year 2000, but that is beside the point. The "advance refund amount" is just that: an "amount" that is calculated by reference to year–2000, not an actual "refund" payable on account of year–2000. As stated above, the amount that "would have" been payable if the Act had applied to year–2000, and the corresponding amount that would have been refunded in that year, are simply used to calculate the amount of the Relief Check issued in anticipation of a year–2001 refund. 26 U.S.C. § 6428(e)(1) and (2).[11]

10. Congress authorized the Secretary of the Treasury to "refund or credit such overpayment as rapidly as possible and, to the extent practicable, before October 1, 2001. No refund or credit shall be made or allowed under this subsection after December 31, 2001." 26 U.S.C. § 6428(e)(3).

11. Trustee argues, in his brief on this appeal, that the bankruptcy court's rulings "suggest[ ] confusion with the alternate eligibility for a credit based upon calculation on the 2001 return, so that those without earnings for 2000, or an advance credit refund claim, might still avail themselves of tax relief." Trustee does not explain what subsection of the Act allows an "alternate" eligibility for a Relief Check on account of year–2000. We find no such provision in the Act.

The bankruptcy court's interpretation of the Act, and our own, is consistent with the only case we have found on point. The court in *In re Rivera*, 2001 WL 1432286, 89 A.F.T.R.2d 2002–673 (Bankr.D.Colo. 2001), held that the "amount of the advance payment is based on the amount of tax liability for the year 2000" but the funds distributed in the year 2001 "represent a tax credit for the 2001 tax year." *Id.* That court recognized that the Relief Check therein was "in reality an advance on the taxpayers' 2001 tax refund that would otherwise have been paid or credited to [them] in 2002 for [their] 2001 tax return." *Id.*

Our reading is also confirmed by the legislative history. The relevant Committee Report states that issuance of the Relief Checks operates "in lieu of the new 10–percent income tax rate bracket for 2001." Comm. Rep. P.L. 107–16, 115 Stat. 38 (2001). The goal of the Relief Checks was to "deliver economic stimulus to the economy more rapidly than would implementation of a new 10–percent rate bracket." *Id.* Clearly then, they were to take the place of a tax reduction in the 2001 tax year. In addition, consistent with the Act, the Committee Report also explained that "the amount of the [Relief C]heck would be computed ... on the basis of tax returns filed for 2000 (instead of 2001)." *Id.* Therefore, the legislative history indicates that the $600.00 Relief Check is not a refund of taxes withheld in 2000. Rather,

it is an accelerated payment of the anticipated tax reduction for earnings made in 2001, based on tax information from 2000. *See id.*

Further, the Internal Revenue Service ("IRS") has expressed an understanding of the Act consistent with our interpretation that the Relief Check is an advance refund of 2001 taxes.[12] The IRS's website states that, if the Relief Check amount is less than the taxpayer's entitled 2001 tax reduction, the taxpayer can claim the difference on his or her 2001 tax form and receive the entitled reduction. *Id.* In other words, the Relief Check is simply an advance payment of an anticipated tax refund for year–2001.

In short, the plain meaning of the Act, the only case on point, the legislative history, and the IRS all agree that the Relief Checks were intended to accelerate the year–2001 tax reduction by giving advance payments calculated by year–2000 tax information. We join that group. The bankruptcy court did not err in concluding that Debtors' Relief Check was intended to be an advance refund for the taxes anticipated for year–2001.

Trustee does not dispute that if, as we have held, the Act authorizes an advance refund of anticipated 2001 taxes, the Relief Check should be prorated under well-established caselaw, nor does he challenge the bankruptcy court's calculation of that proration.[13]

---

**12.** Topic 609—Rate Reduction Credit, Tax Topics, available at www.irs.gov/businesses.

**13.** *See Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)(debtor's loss-carryback refund claim based on losses prior to the filing of bankruptcy held to be sufficiently rooted in pre-bankruptcy past that it belonged to estate; however, if any postpetition losses increased the amount of refund, the refund was to be prorated (superceded on other issues by enactment of the

Bankruptcy Code), as stated in *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1426 (9th Cir.1984)); *Gabrielli v. Shults (In re Shults)*, 28 B.R. 395, 397 (9th Cir. BAP 1983) (court held that debtors had not intentionally concealed tax refunds from the estate but, even if they had, "[b]ecause the bankruptcy was filed mid-year[,] only a fraction of that sum [would be the] property of the estate").

Because no party has challenged the bankruptcy court's method of pro-ration, we express no opinion whether it would make a

## V. CONCLUSION

Congress provided for an advance payment, in the form of the Relief Check, on account of taxpayers' anticipated refund for year–2001 taxes. Because Debtors' Petition Date is in 2001, the bankruptcy court properly held that the Relief Check amount should be prorated according to the Petition Date rather than paid to Trustee based on the tax year prior to bankruptcy. The bankruptcy court's order is, therefore, AFFIRMED.

difference if Debtors had no income in 2001 or had paid no taxes prior to the Petition Date. *See, e.g., Christie v. Royal (In re Christie)*, 233 B.R. 110, 113 (10th Cir. BAP 1999) (most important factor is whether refund was generated from pre-petition payments from what would otherwise have been property of estate). *See also* footnote 3, supra (we do not address whether Rebate Check was entirely a post-petition benefit); *Rivera*, 2001 WL 1432286 (holding that rebate check was not estate property).