bankruptcy court has the more powerful sanctioning authority, it makes no sense for there to be a gap in the continuum that leaves the court without a lighter, more-accurate weapon that could be used without overkill.

In short, I would hold that the plain language of § 1927 demonstrates that Congress did not mean to limit § 1927 sanctions to Article III judges. In the alternative, I would hold that, even if the authorization for other non-Article III courts to impose § 1927 sanctions does not warrant an inferential authorization for bankruptcy judges, § 1927 sanctions are, at a minimum, "noncore" proceedings that a bankruptcy judge may properly entertain in the same fashion as any other "noncore" matter.

Chase's conduct is squarely covered by § 1927. At best, his conduct was reckless. Since I would affirm on the basis of Judicial Code § 1927, I DISSENT.

**In re John F. COUMBE and Holly Barrett Coumbe, Debtors.**

**David A. Birdsell, Chapter 7 Trustee, Appellant,**

**v.**

**John F. Coumbe; Holly Barrett Coumbe; Wells Fargo, Appellees.**

BAP No. AZ–03–1263–RyPMo.

Bankruptcy No. 02–18055–PHX–CGC.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 24, 2003.

Filed Dec. 24, 2003.

Alan B. Nach, Lane & Nach, P.C., Phoenix, AZ, for David A. Birdsell, Trustee.

Michael W. Carmel, Law Office of Michael W. Carmel, Phoenix, AZ, for John F. Coumbe and Holly Barrett Coumbe.

Before RYAN, PERRIS, and
MONTALI, Bankruptcy Judges.

## *OPINION*

RYAN, Bankruptcy Judge.

After John F. and Holly B. Coumbe
("Debtors") filed a chapter 7[1] bankruptcy
petition, Davis A. Birdsell was appointed
the chapter 7 trustee ("Trustee"). Trustee
then filed a motion (the "Motion") to com-
pel Debtors to turn over certain testamen-
tary trust property as property of the
estate. After a hearing, the court entered
an order (the "Order") denying the Mo-
tion. Trustee timely appealed.

We AFFIRM in part, REVERSE in
part and REMAND.

### I. FACTS[2]

In 1994, Minnie Coumbe ("Grantor"),
Debtor's mother, created a testamentary
trust (the "Trust") naming her children
(Debtor and Sue Ann Leonard) as the
primary beneficiaries. Grantor's grand-
children were named as the secondary
beneficiaries.[3] The grandchildren were
entitled to distributions if Debtor and Sue
Ann predeceased them. Debtor was ap-
pointed sole trustee of the Trust. His
sister, Sue Ann, was appointed successor
trustee in the event that Debtor was un-
able or unwilling to serve. When Grantor
died, the Trust was divided equally be-
tween Debtor and Sue Ann. Upon division,
Debtor and Sue Ann became trustees of
their respective shares of the Trust, with
their children taking as secondary benefi-
ciaries. Section 5.2 of the Trust agree-
ment provided a spendthrift provision:

The interest of a beneficiary in the in-
come or principal of the Trust hereun-
der shall be free from the control or
interference of any creditor of the bene-
ficiary or of the spouse of the beneficia-
ry and shall not be subject to attach-
ment, execution or other process of law
or susceptible to anticipation, alienation
or assignment, whether voluntarily or
involuntarily encumbered, except in
those cases where Trustee, in Trustee's
sole discretion, approves the credit ex-
tended and the assignment of the benefi-
ciary's interest hereunder as collateral
therefor . . . .

Trust Agreement (Jul. 31, 1994), at 27.

In 2002, Debtors filed their chapter 7
petition. As of the petition date, Debtors
estimated that there was $120,000 in the
Trust. Within 180 days of filing their
petition, Debtor withdrew $20,000 from the
Trust.

In April 2003, Trustee filed the Motion,
arguing that the Trust was not a valid
spendthrift trust (and therefore was estate
property) because Debtor was the sole
trustee and beneficiary. Further, Trustee
alleged that the $20,000 was estate proper-
ty pursuant to § 541(a)(5)(A). According-
ly, Trustee requested Debtors to turn over
the Trust corpus and $20,000. Debtors
argued that the Trust was not estate prop-
erty because Debtor was not the sole bene-
ficiary and the Trust was a valid spend-
thrift trust. Debtors also contended that
the $20,000 was not "acquired" by "be-
quest, devise, or inheritance" within 180
days of filing of Debtors' petition. Rather,
any acquisition occurred when Grantor

---

**1.** Unless otherwise indicated, all chapter, sec-
tion, and rule reference are to the Bankruptcy
Code, 11 U.S.C. §§ 101–1330 and to the Fed-
eral Rules of Bankruptcy Procedure, Rules
1001–9036.

**2.** For purposes of this appeal, John Coumbe
will be referred as the "Debtor."

**3.** It appears that the only secondary beneficia-
ries were Debtor's children, Amanda and
Tucker.

died in 1994, eight years prior to their bankruptcy.

After the Motion hearing, the court took the matter under advisement.[4] In its under advisement decision (the "Decision"), the court found that Debtor was the only beneficiary receiving distributions from the Trust. However, the court held that the Trust was a valid spendthrift trust under state law and therefore was not estate property. The court also held that the $20,000 withdrawal was not estate property, reasoning that:

> Section 541(a)(5) is drafted and designed to deal with events that occur post-petition that cause a material change in the debtor's financial condition; it does not deal with events that occurred years before the filing that were in existence as of the time of the filing.

Under Advisement Decision Re: Trustee's Motion to Compel (Apr. 29, 2003), at 2–3. Accordingly, the court entered the Order denying the Motion. Trustee timely appealed.[5]

## II. ISSUES

A. Whether the court erred in holding that the Trust was a valid spend-

thrift trust and therefore not property of the estate.

B. Whether the court erred in holding that the $20,000 withdrawal was not property of the estate.

## III. STANDARD OF REVIEW

■■■ We review the court's interpretation of state law de novo. *See Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir.2002). We review the court's conclusions of law de novo. *See Bronner v. Gill (In re Bronner)*, 135 B.R. 645, 647 (9th Cir. BAP 1992). Whether property is included in a bankruptcy estate is a question of law subject to de novo review. *See Sticka v. Lambert (In re Lambert)*, 283 B.R. 16, 18 (9th Cir. BAP 2002).

## IV. DISCUSSION[6]

A. *The Court Did Not Err in Holding That the Trust Was a Valid Spendthrift Trust and Therefore Not Property of the Estate.*

■■■ The court denied the Motion because the Trust was a valid spendthrift

---

**4.** The court also issued a stay to prohibit further distribution from the Trust.

**5.** Generally, an interlocutory order is not appealable. *See Travers v. Dragul (In re Travers)*, 202 B.R. 624, 625–26 (9th Cir. BAP 1996). "An interlocutory order is one which does not finally determine a cause of action, but instead decides only an intervening matter. To become final, the order must end the litigation or dispose of a complete claim for relief, leaving nothing for the court to do but execute the judgment." *Id.* at 625 (citation omitted).

Here, Trustee requested that the court also order Debtors to turn over certain life insurance policy proceeds. In the Decision, the court indicated that the life insurance policy issue would be resolved by separate order. Therefore, the Order was interlocutory and not appealable. *Id.* Nonetheless, on August 6,

2003, the court entered an order overruling Trustee's objection to Debtors' claim of exemption for the life insurance proceeds. Therefore, the Order became final upon the entry of the August 6, 2003 order.

**6.** Trustee raised for the first time on appeal that the Trust was not a valid spendthrift trust because Debtor failed to properly exercise control over the trust res. Therefore, we consider this issue waived. *See Holder v. Holder*, 305 F.3d 854, 867 (9th Cir.2002) ("arguments not asserted in the trial court are waived and will not be considered for the first time on appeal"). In fact, we note that Trustee's position on appeal was in direct contradiction to his position before the bankruptcy court. In the Motion, Trustee alleged that Debtor "exercis[ed] control over the [Trust] res" by using "the [Trust] account as his personal checking account to pay his ordinary daily expenses

trust and therefore not property of the estate. On appeal, Trustee contends that the court erred because the Trust was not a valid spendthrift trust with Debtor as the sole trustee and beneficiary.

 The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, the Code excludes from the estate property that contains "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2). Under § 541(c)(2), an anti-alienation provision in a valid spendthrift trust created under state law is an enforceable "restriction on the transfer of a beneficial interest of the debtor," thereby excluding the trust assets from the bankruptcy estate. *See Patterson v. Shumate*, 504 U.S. 753, 757–58, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). A spendthrift trust is "[a] trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed." RESTATEMENT (SECOND) OF TRUSTS § 152(2). It "prevents the beneficiary from transferring his right to future payments of income or capital; the creditors ... are also prevented from attacking the beneficiary's interest to satisfy their claims." *Togut v. Hecht (In re Hecht)*, 54 B.R. 379, 383 (Bankr.S.D.N.Y.1985). "The purpose of a spendthrift trust is to protect the benefi-

ciary from himself and his creditors." *Richardson v. McCullough (In re McCullough)*, 259 B.R. 509, 517 (Bankr.D.R.I. 2001) (citations omitted).

 Arizona law recognizes the validity of spendthrift trusts.[7] *See Vucurevich v. Stragalas (In re Stragalas)*, 208 B.R. 693, 695 (Bankr.D.Ariz.1997). In Arizona, a valid spendthrift trust must contain an enforceable restraint on the transfer of the beneficiary's interest. *See* A.R.S. §§ 14–7701, 14–7702. Arizona Revised Statutes ("A.R.S.") § 14–7706 provides that:

A. A restraint on voluntary or involuntary transfer pursuant to section 14–7701 or 14–7702 is valid even if the beneficiary or one of the multiple beneficiaries of the trust is also one of the multiple trustees of the trust or if one of the multiple beneficiaries is the sole trustee of the trust.

B. A restraint on voluntary or involuntary transfer pursuant to section 14–7701 or 14–7702 is invalid if the sole beneficiary of the trust is also the sole trustee of the trust.

. . . .

A.R.S. § 14–7706(A)–(B). Therefore, "[a] valid spendthrift trust cannot exist where the sole beneficiary is also the sole trustee." *Riley v. Pugh (In re Pugh)*, 274 B.R. 883, 885 (Bankr.D.Ariz.2002) (citation omitted).

Trustee relies on *Pugh* to conclude that the Trust was not a valid spendthrift trust under Arizona law. However, Trustee's reliance on *Pugh* is misplaced. In *Pugh*,

---

. . . ." Trustee's Emergency Motion to Compel Debtors to Turnover Estate Property (Apr. 9, 2003), at 2–3.

Further, Trustee raised for the first time in his reply brief that: (1) the doctrine of merger prevented the secondary beneficiaries from taking the Trust property; and (2) he is entitled to an evidentiary hearing to determine whether Debtor had improperly controlled the Trust. Because the issues were raised for

the first time in Trustee's reply brief, we need not consider them. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.1990) ("the general rule is that appellants cannot raise a new issue for the first time in their reply briefs").

7. Arizona law applies because the Trust agreement provides that Arizona law shall govern.

the trust contained a spendthrift provision and provided that the debtor, as the sole beneficiary, would be the trustee of his own trust. However, before any withdrawals from the trust, the debtor had to name a co-trustee, and he could not use his discretion to make distributions of principal without the co-trustee's agreement. After the death of the grantor, the debtor named his sister as the co-trustee without her knowledge. The debtor then made withdrawals from the trust bank account without his sister's signature or knowledge. *See Pugh*, 274 B.R. at 885. Because the sister was not capable of exercising informed discretion as to distributions to the beneficiary, the *Pugh* court held that the debtor was in reality the sole trustee. Accordingly, the *Pugh* court held that the spendthrift provision was invalid under A.R.S. § 14–7706(B). *Id.* at 886–87.

Here, it is undisputed that the Trust agreement contained a spendthrift provision restraining the transfer of the beneficiaries' interest. The only issue is whether Debtor was the sole trustee and beneficiary of the Trust. If so, the Trust was an invalid spendthrift trust under A.R.S. § 14–7706(B). Trustee argues that Debtor became the sole trustee of his own trust upon division of the Trust in 1997. He also contends that Debtor was the sole beneficiary because his children's interest under the Trust was "illusory" as it was contingent upon Debtor's death. We disagree.

Unlike *Pugh*, although Debtor was appointed as the sole trustee of the Trust, the Trust agreement also named multiple beneficiaries. Specifically, Debtor and Sue Ann were named the primary beneficiaries, and Debtor's children were named the secondary beneficiaries. After the Trust was divided, Debtor remained the trustee and primary beneficiary of his interest in the Trust. Likewise, Debtor's children remained the secondary beneficiaries of that interest. Trustee did not point to, nor are we aware of, any authority that eliminates from consideration secondary beneficiaries. Under Arizona law, a spendthrift trust is valid "if one of the multiple beneficiaries is the sole trustee of the trust." A.R.S. § 14–7706(A). Here, we have multiple beneficiaries when both Debtor and his children are considered. Therefore, we cannot say that the court erred in holding that the Trust was a valid spendthrift trust under Arizona law. Because the Trust was a valid spendthrift trust, Debtors' interest in the Trust was excluded from the bankruptcy estate. *See Patterson*, 504 U.S. at 757–58, 112 S.Ct. 2242. Accordingly, the court did not err in holding that the Trust corpus was not property of estate. *See* 11 U.S.C. § 541(c)(2).

B. *The Court Erred in Holding That the $20,000 Withdrawal Was Not Property of the Estate.*

The court held that the $20,000 paid from the Trust was not property of the estate. On appeal, Trustee contends that the court erred because a distribution from the Trust paid within 180 days after Debtors' bankruptcy constituted property of the estate under § 541(a)(5)(A).

Under § 541(a)(5)(A), property of the estate includes

> [a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
>
> (A) by bequest, devise, or inheritance;
>
> . . . .

11 U.S.C. § 541(a)(5)(A). The Code provides no definition of the terms "bequest," "devise" or "inheritance." Traditionally, a

"bequest" is "a gift (transfer) by will of personal property." BLACK's LAW DICTIONARY 160 (6th ed.1990). A "devise" is "a testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor." *Id.* at 452. Finally, an "inheritance" is "[p]roperty which descends to heir on the intestate death of another." *Id.* at 782.

The main issue is whether a distribution from the Trust is a "bequest, devise, or inheritance" within the meaning of § 541(a)(5)(A) and thus property of estate. The answer turns on whether the distribution is from the corpus or income.

### i. *Corpus Distribution*

 As stated above, a bankruptcy trustee can assert no claim to the corpus of a spendthrift trust because it is not property of estate. *See* 11 U.S.C. § 541(c)(2). Therefore, it flows logically that a corpus distribution from a spendthrift trust should also be excluded from property of estate. *See Magill v. Newman (In re Newman)*, 903 F.2d 1150, 1152 (7th Cir. 1990) (holding that the debtor's interest in the distribution of the corpus of the spendthrift trusts was not property of estate); *see also Mitchell v. West (In re West)*, 81 B.R. 22, 25–26 (9th Cir. BAP 1987) ("The debtor's interest in property excluded under section 541(c)(2) is not listed in section 541(a)(5). . . . [B]y this omission, Congress intended that such property not come into the estate."). "A contrary decision would drain the spendthrift trusts of any meaning and ignore the relevant Bankruptcy Code provision." *Newman*, 903 F.2d at 1152.

### ii. *Income Distribution*

 On the other hand, a majority of courts have held that an income distribution from a testamentary spendthrift trust constitutes a "bequest" within the meaning

of § 541(a)(5)(A) and therefore is property of the estate.

In *Hecht*, the debtor, a beneficiary of two spendthrift trusts, continued to receive income payments from the trust after the filing of her petition. The chapter 7 trustee sought to recover the trust income distributed to the debtor within 180 days of the filing of her bankruptcy. The *Hecht* court found that the trust was a valid spendthrift trust. *See Hecht*, 54 B.R. at 381–83. It then decided the question whether income from the testamentary spendthrift trust constituted a "bequest" within the meaning of § 541(a)(5)(A). The *Hecht* court concluded that the word "bequest" should be construed to "encompass[ ] testamentary gifts of income from a trust" because "a testamentary trust is itself a testamentary disposition whereby rights created under a will, together with property dispositions directed thereby, are to be given effect." *Id.* at 385 (quoting *Roy v. Edgar*, 11 B.R. 853, 855–56 (Bankr. N.D.Fla.1981)).

Similarly, in *Gordon C. York, Inc. v. Kragness (In re Kragness)*, 58 B.R. 939 (Bankr.D.Or.1986), the debtor was a beneficiary of a testamentary spendthrift trust, and within the 180–day period following the filing of her chapter 7, she received income payments from the trust. *Id.* at 940. The debtor argued that the payments received within the 180–day period were not property of estate. Specifically, the debtor reasoned that such payments were not "by bequest, devise, or inheritance" because she was merely receiving an income distribution from a trust that was already established at the time of the bankruptcy filing. *Id.* at 944. The *Kragness* court disagreed because an income payment from a testamentary trust constituted a "bequest" within the meaning of § 541(a)(5)(A) and therefore was property of the estate if received within 180 days of

the debtor's bankruptcy. *Id.; see also Smith v. Moody (In re Moody)*, 837 F.2d 719, 723 (5th Cir.1988) ("the income payments from a spendthrift trust which the beneficiary is entitled to receive or does receive within the 180 day period after the filing of the bankruptcy petition are brought into the bankruptcy estate"); *In re Schauer*, 246 B.R. 384 (Bankr.D.N.D. 2000) (holding that post-petition income distributions from a testamentary trusts are "bequests" qualified for inclusion in the bankruptcy estate under § 541(a)(5)(A)).

■ In addition, the payment is no longer restricted. This result is consistent with the theory of a spendthrift trust because "[o]nce trust income is paid to [the beneficiary] the income so paid is no longer subject to the protection of the spendthrift provisions contained in the trust." *Kragness*, 58 B.R. at 944; *see also In re Hunter*, 261 B.R. 789, 793 (Bankr.M.D.Fla. 2001); *Togut v. Hecht*, 69 B.R. 290, 291 (S.D.N.Y.1987).

On appeal, Debtors rely on *Newman* to support their position that income from a spendthrift trust is not property of the estate even if received within 180 days of the filing. Debtors' reliance on *Newman* is misplaced. The trusts in *Newman* were not testamentary spendthrift trusts (rather inter vivos trusts) of which the debtor was a beneficiary. *See Newman*, 903 F.2d at 1151. Therefore, income from the trusts was not property of the estate because it did not qualify as a "bequest, devise, or inheritance" under § 541(a)(5)(A). *Id.* at 1154; *see also Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 422 n. 2 (9th Cir. BAP 1997) (stating that inter vivos trusts are not considered an interest obtained by "bequest, devise or inheritance"); *In re Crandall*, 173 B.R. 836, 839 (Bankr.

D.Conn.1994) ("[t]he court is constrained to give a narrow construction to the words 'bequest, devise, and inheritance' and to conclude such words in their plain meaning do not encompass ... inter vivos trusts").

Relying on *Chappel v. Proctor (In re Chappel)*, 189 B.R. 489 (9th Cir. BAP 1995), Debtors further allege that the "triggering event" to determine when Debtor "acquires or becomes entitled to acquire" by bequest, devise, or inheritance was Grantor's death. However, *Chappel* is distinguishable. There, four days before the debtor filed his petition, his mother passed way. The mother's will was entered into probate more than 180 days after filing of the debtor's bankruptcy. Therefore, the debtor argued that his interest in the probate estate was not property of the bankruptcy estate because he did not acquire an interest in the probate estate until the will was entered, which was beyond the 180–day period. *Id.* at 490–91. The bankruptcy court disagreed and held that the debtor's interest in the probate estate was property of the bankruptcy estate. On appeal, we affirmed the bankruptcy court because, under state law, a decedent's property passes to the beneficiary at the time of death. Therefore, the property passed to the debtor before the filing and became property of the bankruptcy estate on the date of filing. *Id.* at 492 (citing CAL. PROB. CODE § 7000). Because *Chappel* did not involve a testamentary spendthrift trust in which the corpus was not property of the estate, *see* 11 U.S.C. § 541(c)(2), it is not relevant here. Further, *Chappel* did not answer the question whether distributions from a testamentary spendthrift trust within the 180–day period are property of the debtor's bankruptcy estate.[8]

8. In *Chappel*, no distribution was made to the debtor because the *Chappel* court issued an

order staying all distribution of the debtor's

 Here, the Trust is a testamentary spendthrift trust. Debtor's income distributions from the Trust within 180 days after bankruptcy clearly fall within the provisions of § 541(a)(5)(A). *See Hecht*, 54 B.R. at 385; *Kragness*, 58 B.R. at 944. It is also undisputed that Debtor acquired and became entitled to the $20,000 within the 180-day period after the commencement of the bankruptcy. However, it is not clear from the record whether the $20,000 was a distribution from the corpus or income.[9] To the extent it was a corpus distribution, that portion was not property of the estate. *See Newman*, 903 F.2d at 1152. On the other hand, to the extent the distribution was income, that portion was a "bequest" and therefore property of the estate pursuant to § 541(a)(5)(A). *See Kragness*, 58 B.R. at 944; *West*, 81 B.R. at 26 n. 2. In the latter case, the income is subject to administration by Trustee and must be turned over by Debtors. *See* 11 U.S.C. § 542(a); *see also Hecht*, 54 B.R. at 385. Accordingly, we remand to the bankruptcy court to determine how the $20,000 was allocated between income and corpus distributions.

## V. CONCLUSION

The court did not err in holding that the Trust was a valid spendthrift trust and therefore not property of estate. However, the court erred in holding that the $20,000 was not property of the estate without determining how the $20,000 was allocated between income and corpus distributions. Accordingly, we remand to the

---

interest from the probate estate. *See Chappel,* 189 B.R. at 491.

9. The court did not make a finding on this issue. On appeal, the parties dispute the character of the $20,000. Trustee alleges that the $20,000 was an income distribution from the Trust. However, Debtors contend that "the property distributed was not income

bankruptcy court for further proceedings consistent with this decision.

AFFIRMED in part, REVERSED in part and REMANDED.

from the Trust, but a portion of the Trust res itself." Appellee's Opening Brief (Jul. 9, 2003), at 7. We note that section 4.3 of the Trust agreement specifically provides the trustee of the Trust the sole discretion to distribute either income or corpus to the beneficiaries.