**In re Christopher T. LAMBERT and Katherine D. Lambert, Debtors.**

No. 601–61015–fra7.

United States Bankruptcy Court,
D. Oregon.

Dec. 11, 2001.

Lars H. Olsen, Salem, OR, for Debtors.

Ronald R. Sticka, Eugene, OR, trustee.

## MEMORANDUM OPINION

FRANK R. ALLEY, III, Bankruptcy Judge.

In this matter the Court must determine whether money received by the Debtors under newly enacted tax legislation is property of the Estate. I find that the funds are attributable to the tax year 2001, the year this case was filed, and that the funds must be prorated between the Estate and the Debtors.

## I. BACKGROUND

The Debtors filed their Petition for Relief under Chapter 7 of the Bankruptcy Code on February 22, 2001. Subsequently, Congress enacted, and the President approved, the Economic Growth and Tax Relief Reconciliation Act of 2001 (hereinaf-

ter simply "the Act").[1] Pursuant to the Act, Debtors received a check from the United States Treasury, dated September 21, 2001, in the sum of $600.00. On or about November 14, 2001, Debtors delivered the check to the Trustee. According to Debtors' motion, the check was delivered in response to a written demand from the Trustee for surrender of the funds.

Debtors have now filed a motion to compel the Trustee to abandon the funds, on the grounds that the funds are in fact not property of the Estate.

The Trustee maintains that the money is a refund of taxes paid in the year 2000, or otherwise attributable to 2000, and is therefore property of the Estate. The Debtors disagree, claiming that the funds constitute an entitlement newly created after the Petition was filed and are not property of the Estate.

While the procedural posture may be ambiguous[2], the parties agree on the nature of the controversy: What interest, if any, does the Estate have in the $600.00 tax relief check?

## II.  DISCUSSION

The Act reduced the rate of tax imposed on the first $12,000 of income from 15% to 10%. In other words, the tax paid on the first $12,000 earned in 2001 and thereafter is reduced from $1,800 to $1,200, or by $600. Taxpayers who paid tax in 2000 are presumed to make the same payments in 2001. Moreover, taxpayers who did not pay tax in 2000 are treated as if they had.

The Government is not giving away its money (but see below), but rather undertaking to keep less of each taxpayer's 2001 income than originally permitted by the pre-Act rates. This necessarily requires a return of any money collected in excess of the amounts now due, either in the form of a reduction of tax payed on higher brackets (i.e., a tax credit taken on the 2001 return either lowering the balance due, or applying it toward future tax liability), or cash.

For political and economic reasons not important here Congress has undertaken to accelerate the refund process by sending $600 to filers of joint returns who paid tax in the 2000 tax year. To calculate the amount the statute assumes certain payments by taxpayers in 2000, whether they were actually made or not.

When the time comes to file their 2001 tax returns, taxpayers will be required to reconcile the amount their actual tax is reduced and the money payment received in advance. The IRS describes the process this way:

> [Taxpayers will] complete a worksheet calculating the amount of credit based on their 2001 tax return. They would then subtract from the credit the amount of the check they received. For many taxpayers, these two amounts would be the same. If, however, the result is a positive number (because, for example, the taxpayer had no tax in 2000 but is paying tax in 2001), the taxpayer may claim that amount as a credit against 2001 tax liability. If, how-

1.  The complete citation is Economic Growth and Tax Relief Reconciliation Act of 2001, Pub.L. No. 107–16, 115 Stat. 38. When codified the Act will be strewn throughout the Internal Revenue Code, U.S.C. Title 26.

2.  Debtors demand that the Trustee abandon the Estate's interest in the funds on the grounds that the Estate has no interest. As a

practical matter what is happening here is that the Debtors are resisting, after the fact, the Trustee's demand that the funds be delivered. For all intents and purposes this is a proceeding to compel the Debtors to deliver property to the Trustee, and will be treated as such. See FRBP 7001(1) and FRBP 9014.

ever, the result is negative (because, for example, taxpayer paid tax in 2000 but owes no tax for 2001) the taxpayer is not required to repay that amount to the Treasury. *Excerpt from explanation of Conference report, Pub.L. No. 107–16, 115 Stat. 38 (5/26/01).*

■ There is little in the record establishing what the Debtors paid in taxes for 2000, or what they will ultimately owe for 2001.[3] If they owe no taxes for 2001, the $600 will amount to a benefit not unlike the Earned Income Credit (EIC) payable to low-income taxpayers. 26 U.S.C. § 32. Just as EIC payments are property of the estate, *In re Buchanan,* 139 B.R. 721 (Bankr.D.Idaho 1992), so the $600 would have been to the extent attributable to pre-petition 2001, *if* the right had existed on the date of the petition. If the debtor's tax credit and the check are equal, or they are entitled to further credit, the check, for all intents and purposes, is a refund of excess tax payments made in 2001, distinguishable from ordinary refunds only by the date the check was mailed by the Treasury. · Such refunds are property of the estate to the extent the overpayment was made with money that otherwise would have been property of the estate. *Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (Refunds attributable to loss carryback provision of Internal Revenue Code are property of the estate). The *Segal* Court laid down the oft-cited proposition that after acquired property is part of the bankruptcy estate if it is "sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start that it should not be excluded from property of the estate."

■ The Trustee argues that the payment "is based entirely upon the return filed for 2000; and therefore, the amount of the credit was identifiable by retroactive impact as of the commencement of this bankruptcy case...The factors which give rise to this entitlement are rooted in the pre-bankruptcy past and, thus, make this estate property."

The payment is "based" on the 2000 tax year only in the sense that 2000 tax payments (actual or imputed) are used as the basis for calculating 2001 tax payments subject to refund. The pertinent section of the Act (entitled "Advance Refunds of Credit Based on Prior Year Data") states that

(1) IN GENERAL—Each individual who was an eligible individual for such individual's first taxable year beginning in 2000 *shall be treated as having made a payment* against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.

(2) ADVANCE REFUND AMOUNT— For purposes of paragraph (1), the advance refund amount is the amount what *would have been allowed* as a credit under this section for such first taxable year *if this section...had been applied to such taxable year.* P.L. 107–16, Sec. 6428(e). [Emphasis added]

The Trustee appears to construe the first paragraph as creating an entitlement with respect to year 2000 tax payments. In light of the additional language, it is clear that the debtor's 2000 tax year provides a template for calculating 2001 benefits, and nothing more. The Act has no effect on liability for 2000, and does not create an overpayment attributable to 2000.

---

**3.** Schedules E and F filed with Debtors' petition for relief disclose no debts attributable to taxes. Schedule I shows income on the filing date of roughly $3,200/month, and the Statement of affairs reveals gross income in 2000 of $32,000.

■ The estate's right to tax refunds is not based on whether the tax liability is based on pre-petition earnings, but whether the money being refunded was placed in the government's hands before or after the petition was filed. *In re Christie*, 233 B.R. 110 (10th Cir. BAP 1999). In *Christie*, the debtors paid delinquent taxes owed for a pre-petition tax year with money earned post-petition (and thus excluded from the estate). As it turned out, the accountant's estimate was high, and the amount paid was in excess of the debtors' liability. The BAP rejected the trustee's claim that the resulting refund was property of the estate, noting that, as of the date of the petition, the debtors had no right to a refund of an overpayment, since the overpayment had not yet occurred. Since the refund was a return of post-petition assets excluded from the estate under 11 U.S.C. § 541, it was never part of the estate.

Debtors argue that the benefits of the Tax Relief Act did not exist at the time Debtors filed for relief, and that no part of the Act's benefits are included in the Estate. Two recent cases have held that benefits created after a petition for relief is filed do not become estate assets simply because the benefit is measured by or granted because of pre-petition events. In *In re Schmitz*, 270 F.3d 1254 (9th Cir. 2001), the Court of Appeals held that fishing quota rights promulgated after the debtor's petition was filed were not an asset of the estate, because the right did not exist on the date of the petition, and, while the rights were calculated on the basis of the debtor's pre-filing fishing activities, they only governed post-petition fishing. The Court noted with approval the opinion of the 10th Circuit Bankruptcy Appellate Panel in *In re Vote*, 261 B.R. 439 (8th Cir. BAP 2001). In *Vote*, the Panel held that payments under crop disaster assistance programs created by Congress post-petition were not property of the estate, even if the disaster the payments were attributable to occurred pre-petition. In a passage quoted by the Court of Appeals in *Schmitz*, the Panel says

> As of the date the Debtor filed his bankruptcy petition, he may have had, at most, an expectation that Congress would enact legislation authorizing crop disaster or assistance payments to farmers affected by the weather conditions in 1999, but there was no assurance that Congress would authorize such payments or that the debtor would qualify for them if they were authorized. It was equally likely that Congress would *not* pass such relief legislation. Such an expectancy (or "hope," if you will) does not rise to the level of a 'legal or equitable interest' in property such that it might be considered property of the estate under 11 U.S.C. § 541(a)(1).

261 B.R. 439, 444.

■ In light of *Segal, Schmitz,* and *Vote,* treatment of monies paid this summer under the Act will depend on how much total tax is payable with the Debtors' 2001 tax returns. *Segal* is still applicable if the payments are early tax refunds. Money paid to or withheld by the IRS pre-petition (or, more precisely, pre-petition money paid to the IRS) is property of the estate if and when refunded. The fact that the Relief Act alters the amount does not change the fundamental character of the property. On the other hand, if the money is proceeds of a new benefit, it is not included in the estate under *Schmitz* and *Vote.*

■ Determination of the parties' interest in the funds cannot be determined until Debtors' 2001 tax liability is determined. If the payment is equal to or less than the total tax liability, the September check is a refund, and a pro rata share—$84.00 by my calculation—will be payable to the Es-

tate. If the September payment is greater than the tax liability, the excess may be retained nevertheless, and therefore is a newly created benefit that is not part of the Estate.

## III. CONCLUSION

The $600.00 received by the Debtors under the Economic Growth and Tax Relief Reconciliation Act of 2001 is property of the Estate only to the extent of that portion attributable to that part of the 2001 tax year prior to February 22, the petition date. Moreover, if the Debtors' 2001 tax liability is less than $600, the amount of the payment in excess of the liability is also excluded from the estate.

The Trustee should return the check to the Debtors. If the Debtors' 2001 tax return discloses total tax liability of $600.00 or more they shall remit the sum of $84.00 to the Trustee, plus any additional refund payable to them and attributable to the pre-petition part of the year. If the total tax liability is less than $516.00, then nothing needs to be paid to the Trustee. Anything falling in between can be calculated by the parties.

This opinion constitutes the Court's findings of fact and conclusions of law. Counsel for the Debtor shall submit a form of order consistent with this opinion.