**In re Wilbert Anton WOOLDRIDGE and Frances Michelle Wooldridge, Debtors.**

No. 08–40322.

United States Bankruptcy Court, D. Idaho.

Sept. 8, 2008.

---

**723**

Paula Brown Sinclair, Twin Falls, ID, Attorney for Debtors.

Richard D. Greenwood, Twin Falls, ID, Attorney for Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### I.

### Introduction

Chapter 7 trustee Gary L. Rainsdon ("Trustee") filed a Trustee's Objection to [Debtors'] Claim of Exemption. Docket No. 16. Debtors Wilbert and Frances Wooldridge ("Debtors") responded. Docket Nos. 24, 25 and 31. The Court conducted a hearing on the objection on July 21, 2008, at the conclusion of which it invited the parties to file any further submissions by July 25, 2008. The issues were taken under advisement, and after careful consideration of the submissions of the parties, the arguments of counsel, as well as the applicable law, the Court intends this Memorandum to constitute its findings of fact and conclusions of law, and resolution of the issues. Fed. R. Bankr.P. 7052; 9014.[1]

### II.

### Procedural History

In February, 2008, Congress passed, and the President signed, the Economic Stimulus Act of 2008 ("the Act"). Pub.L. No. 110–185, 122 Stat. 613 (codified in scattered sections of Title 26, U.S.C.). On April 21, 2008, Debtors filed their chapter 7 petition. In May, 2008, Debtors received a stimulus check issued to them under the Act for $900. On June 12, 2008, Debtors amended their bankruptcy schedules B and C, respectively, to list the stimulus payment as a 2008 federal tax credit, and to claim it exempt pursuant to Idaho Code § 11–603(4). Docket No. 15.

Trustee objected to the amended claim of exemption because "[t]he 2008 federal tax credit (stimulus program payment) is not public assistance, but is based on the 2007 tax return; therefore, exemption should be disallowed." Docket No. 16. Debtors' responses contesting Trustee's

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

objection, and the hearing and post-hearing submissions, followed.

## III.

### Analysis and Disposition

The Economic Stimulus Act of 2008 is composed of three separate titles, divided into six separate sections.[2] 122 Stat 613. Here, the parties and Court need focus solely on Title I, Section 101 authorizing "2008 recovery rebates for individuals."[3] While discussed in greater detail below, in substance, the Act provides that a payment (denominated a "tax credit") be distributed from the federal government in specified amounts to eligible taxpayers. Debtors received such a payment in the amount of $900, and seek to shield it from capture by Trustee by claiming it as exempt.

There are essentially two avenues by which Idaho debtors in bankruptcy may arguably retain a stimulus payment, either in whole or in part. First, debtors might argue that the payment is not property of the bankruptcy estate as that concept is embodied in § 541, and therefore, it is beyond the reach of a chapter 7 trustee's administration. Second, debtors may contend that while the stimulus payment is indeed property of the bankruptcy estate, it is exempt from seizure under state law as being in the nature of public assistance.

Debtors here claim the payment is exempt. But unless the payment is bankruptcy estate property, there is no need for Debtors to exempt it. Under these circumstances, then, the Court must examine each of the two theories discussed above.

### A. The Stimulus Payment is Included in Debtors' Bankruptcy Estate.

■ A debtor's estate in bankruptcy is broadly defined as comprising "all legal or equitable interests of the debtor in proper-

---

2. The Act is lengthy, and will not be reproduced in its entirety here. The most relevant portion provides:
   (a) In general.—In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2008 an amount equal to the lesser of—
   (1) net income tax liability, or
   (2) $600 ($1,200 in the case of a joint return).
   (b) Special rules.—
   (1) In general.—In the case of a taxpayer described in paragraph (2)—
   (A) the amount determined under subsection (a) shall not be less than $300 ($600 in the case of a joint return), and
   (B) the amount determined under subsection (a) (after the application of subparagraph (A)) shall be increased by the product of $300 multiplied by the number of qualifying children (within the meaning of section 24(c)) of the taxpayer.
   (2) Taxpayer described.—A taxpayer is described in this paragraph if the taxpayer—
   (A) has qualifying income of at least $3,000, or
   (B) has—
   (i) net income tax liability which is greater than zero, and
   (ii) gross income which is greater than the sum of the basic standard deduction plus the exemption amount (twice the exemption amount in the case of a joint return).
   (c) Treatment of credit.—The credit allowed by subsection (a) shall be treated as allowed by subpart C of part IV of subchapter A of chapter 1.
   (d) Limitation based on adjusted gross income.-The amount of the credit allowed by subsection (a) (determined without regard to this subsection and subsection (f)) shall be reduced (but not below zero) by 5 percent of so much of the taxpayer's adjusted gross income as exceeds $75,000 ($150,000 in the case of a joint return).
   26 U.S.C.A. § 6428.

3. Codified at 26 U.S.C.A. § 6428. Title II of the Act provides for "Housing GSE and FHA Loan Limits" and Title III gives the Act an emergency designation.

ty as of the commencement of the case." 11 U.S.C. § 541(a)(1). Nevertheless:

> [W]hile the scope of § 541(a)(1) is broad, it is not without its limits; it is limited temporally by the plain language of the statute to interests that exist as of the commencement of the case, and is further limited by the scope and definition given to the phrase "all legal and equitable interests."

*In re Howell*, 01.4 I.B.C.R. 166, 167 (Bankr.D.Idaho 2001) (quoting *Drewes v. Vote (In re Vote)*, 261 B.R. 439, 442 (8th Cir.BAP2001)).

█ The Act became law on February 13, 2008, more than two months before Debtors filed their bankruptcy petition. The Act contained no requirement to actively apply for the stimulus payment; rather the method by which a payment was to be claimed was simply to "complete a federal tax return this year [referring to a 2007 return completed in 2008] ..." *See* www.irs.gov. As there is no contention that Debtors here were not eligible taxpayers, and because they apparently filed a federal tax return for 2007,[4] they were automatically eligible for the stimulus payment. As such, on the date they filed their petition, Debtors "were entitled to and fully qualified to receive" the stimulus payment created by the act. *Howell*, 01.4 I.B.C.R. at 168 (considering the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub.L. No. 107–16, 115 Stat. 38); *In re Campillo*, 2008 WL 2338316 *1 (Bankr. D.Ariz.) (June 6, 2008) (the right to receive the stimulus payment existed pre-petition and that right passed to the trustee); *cf. In re Andrews*, 386 B.R. 871 (Bankr. D.Utah) (stimulus payment held not to be part of bankruptcy estate when the petition was filed prior to the Act's passage). Accordingly, the payment was part of their bankruptcy estate.

## B. Exemption of the Stimulus Payment.[5]

█ Debtors claim the stimulus payment exempt pursuant to Idaho Code § 11–603(4), which provides in pertinent part:

> An individual is entitled to exemption of the following property:
>
> \*   \*   \*   \*   \*   \*
>
> (4) benefits the individual is entitled to receive under federal, state, or local public assistance legislation[.]

---

**4.** An Income Tax Turnover Order was issued and served on Debtors in this case. Docket No. 10. Because their Schedule I reflects that Debtors had income, Docket No. 1, and the docket indicates that Trustee never filed a motion to compel turnover of income tax, the Court surmises that Debtors in fact filed their 2007 income tax return and delivered a copy to Trustee as commanded by the Order. Their receipt of the stimulus payment supports this conclusion. Taxpayers have until October 15, 2008 to file their 2007 federal income tax return in order to qualify for the stimulus payment. *See* www.irs.gov.

**5.** The Court has often acknowledged the ground rules for a contest over exempt property. Idaho has opted out of the federal exemption scheme, and thus Idaho's exemption laws control what types of property may be exempted by debtors in bankruptcy cases.

§ 522(b)(2), (3); Idaho Code § 11–609. As the objecting party, Trustee bears the burden of proving that Debtor's claim of exemption is not proper. Rule 4003(c); *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); *In re Katseanes*, 07.4 I.B.C.R. 79, 79 (Bankr.D.Idaho 2007). Moreover, the validity of a claimed exemption is determined as of the date of filing of the bankruptcy petition. § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001); *In re Yackley*, 03.1 I.B.C.R. 84, 84 (Bankr.D.Idaho 2003). Finally, exemption statutes are to be liberally construed in favor of the debtor. *In re Kline*, 350 B.R. 497, 502 (Bankr.D.Idaho 2005) (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr.D.Idaho 2001); *In re Koopal*, 226 B.R. 888, 890 (Bankr.D.Idaho 1998)).

■ When previously faced with the question of whether a federal tax credit is in the nature of public assistance, and thus exempt, this Court has applied a three-part inquiry:

> First, what is the purpose and policy of the tax credit, as enunciated by the courts or established by legislative history, and in particular is that policy one of "public assistance" as found in [*In re Jones*, 107 B.R. 751 (Bankr.D.Idaho 1989) ].
>
> Second, what is the nature of the debtor/taxpayer's access to the credit, i.e., is it a refundable credit. Third, when and at what income levels is the credit phased down and/or eliminated.

*In re Dever*, 250 B.R. 701, 704 (Bankr.D.Idaho 2000); *In re Steinmetz*, 261 B.R. 32, 33 (Bankr.D.Idaho 2001); *In re Crampton*, 249 B.R. 215 (Bankr.D.Idaho 2000).

### 1. The Purpose and Policy of the Act.

■ The first consideration is the purpose and policy of the Act, and specifically, if that purpose and policy is one of public assistance.

The stated purpose of the Act is "[t]o provide economic stimulus through recovery rebates to individuals, incentives for business investment, and an increase in conforming and FHA loan limits." 122 Stat. 613. There is a dearth of any legislative history regarding the Act because Congress and the President acted quickly to secure its adoption in the face of difficult economic circumstances.[6] Nevertheless, during congressional consideration, a number of key lawmakers spoke publicly about the proposed legislation. From these comments, the Court is confident in concluding that passage of the Act was motivated by Congress' desire to put cash into the hands of lower—and middle-income families so that by spending it, they would stimulate the United States' economy.

For example, in a transcript of the news conference at which the stimulus bill was announced, House Speaker Nancy Pelosi stated "[f]irst and foremost, the stimulus package will put money in the hands of hardworking Americans. This is a middle-class initiative to strengthen the middle class and to those who aspire to be in the middle class." http://democraticwhip.house. gov/whip_pack/2008/1/28/docs/transcrip_ press _conf_econ_pkg.pdf; *see also* David M. Herszenhorn and David Stout, *Tentative Deal Reached on Stimulus Plan, The New York Times*, January 24, 2008. During the same announcement, House Minority Leader John Boehner stated that the Act "will stimulate our economy in the most direct and effective way possible by putting money in the hands of middle-income American families...." *Id.* Consistent with these comments, Senator Charles E. Schumer stated that the House bill "is aimed as it should be, a bull's-eye right on the middle class[.]" Jonathan Weisman and Peter Baker, *Bush, House Hammer Out $150 Billion Stimulus Bill, Washington Post*, January 25, 2008.

Guidance regarding the purpose of the Act was also provided by the executive branch. The day President Bush signed the Act into law, his communications office issued a "Fact Sheet" concerning the Act. It stated that the Act was proposed and passed, "[t]o address short-term economic uncertainties" and is something which "puts money back into the hands of Ameri-

---

6. Indeed, the process of adoption of the law authorizing these payments was exceptionally fast. The bill was initially considered in the House on January 29, 2008, and the Act became law on February 13, 2008. 122 Stat. 613.

can workers and businesses." *Fact Sheet: Bipartisan Growth Package Will Help Protect Our Nation's Economic Health,* 2008 WL 379640 (White House); Signing Statement, Public Law 110–185, White House Press Release, Feb. 13, 2008.

■ In many instances, news releases and similar statements of congressional leaders and the President do not necessarily accurately reflect the true intent of those enacting legislation, however, in the absence of more formal legislative history, the Court regards these statements and information as fairly reliable. Indeed, given the unanimity of purpose expressed in these reports, it seems quite clear that the Act was a measure intended to stimulate the United States' economy by providing additional funds to eligible taxpayers to spend on purchasing goods and services, and that the program was directed, in large part, at the so-called "middle" economic class.

Debtors contend that Congress never intended payments to be used to pay down existing debt, as this would not stimulate the current economy, and thus, these funds were never meant to be administered by bankruptcy trustees, and used to pay existing debt. However, under *Dever* and *Steinmetz,* the Court need not consider whether given legislation puts money in the pockets of debtors versus creditors. Rather, because Idaho exemption law controls in this context, the appropriate analysis is whether the Act's purpose and policy fits within Idaho's exemption for public assistance.

In *In re Jones,* 107 B.R. 751 (Bankr.D.Idaho 1989), the Court held that the earned income credit was in the nature of public assistance. It noted the primary purpose behind the earned income credit was to "afford economic relief to low income heads of household who work for a living." *Id.* at 752 (quoting *In re Searles,*

445 F.Supp. 749, 752 (D.C.Conn.1978)). Put another way, the Court noted that the "earned income credit was an item of social welfare legislation intended to provide low income families with 'the very means by which to live.'" *Id.* (quoting *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

In contrast to the earned income credit, this Court has held that the so-called "Hope Scholarship Credit" was not in the nature of public assistance, but rather was "designed as an incentive for any person, or dependent, considering post-secondary job training and education." *Crampton,* 249 B.R. at 217. In concluding that it was not exempt, the Court found that the Hope Scholarship Credit:

> was designed to benefit a broad range of individuals and families incurring educational expenses, including many earning substantial incomes. While undoubtedly the Hope credit will aid lower income individuals and families, its purpose was not limited to assisting the working poor, as was the earned income credit.

*Id.* at 218.

Then, in *Dever,* the Court considered the child tax credit in light of *Jones* and *Crampton,* and concluded that:

> While the child tax credit may have been viewed by Congress as good and necessary social policy, it was designed so as to benefit a large percentage of Americans. This includes taxpayers with incomes up to $110,000 per year. It can hardly be said that it was designed or implemented as "public assistance" legislation in the sense of social welfare as discussed by the Court in *Jones* and *Crampton.*

*Dever,* 250 B.R. at 706.

■ In considering the policy and purpose behind the Act here, another impor-

tant piece of the puzzle is found in the Court's pronouncement in *Dever* that:

it is the public assistance nature of the benefit, and not the financial circumstances of the recipient, that drives the conclusion of whether § 11–603(4) applies. To hold otherwise would mean that all legislative benefits poorer debtors receive would be exempt simply because they were poor.

*Dever,* 250 B.R. at 706.

Though the Court has, effectively, no official legislative history to consider, the comments made by members of Congress, as well as the very text of the Act itself, leaves little doubt that the policy and purpose behind the Act is not one of public assistance. Instead, the stimulus payments represent the efforts of Congress to jump-start the United States' slumping economy by stimulating spending. There is no demonstrable concern evident whether that spending was directed at those goods and services necessary for debtors to survive, or whether the hope was that taxpayers would use the money for the purchase of nonessential items. In other words, there is nothing to show that the Act represents social welfare, as opposed to purely economic, legislation.

### 2. The Nature of Debtors' Access to the Credit.

The second analytical factor to be considered under *Steinmetz* focuses upon the nature of the debtor/taxpayer's access to the tax credit. In this process, the Court should question whether the money being made available to the debtor is a refundable credit or not. The Court finds that it is a refundable credit.

A refundable tax credit is one which, even if a taxpayer owes no tax, he or she may nevertheless claim and receive. *Crampton,* 249 B.R. at 217. The text of the Act guides the Court concerning how

Congress intended that the stimulus payments be regarded. Subsection (c) of the Act reads:

(c) TREATMENT OF CREDIT.—The credit allowed by subsection (a) shall be treated as allowed by subpart C of part IV of subchapter A of chapter 1.

26 U.S.C.A. § 6428(c). When translated, this reference lines up:

Chapter 1: Normal Taxes and Surtaxes
    Subtitle A: Tax On Individuals
    Part IV: Credits Against Tax
        Subpart C: Refundable Credits

Restructuring the legislative reference in this fashion shows that the stimulus payment was intended to be treated as a refundable credit. It is more complicated than this, however.

Debtors, pointing to this portion of the Act, contend that it indicates Congress intended the stimulus payments to be treated like the earned income tax credit, which has been held to be exempt. The Court disagrees. This is because Subpart C contains five sections, not all of which are treated alike in the bankruptcy forum:

§ 31: Tax withheld on wages

§ 32: Earned Income

§ 33: Tax withheld at source on nonresident aliens and foreign corporations

§ 34: Certain uses of gasoline and special fuels

§ 35: Overpayments of tax

26 U.S.C.A. §§ 31–35. In structuring the Internal Revenue Code, Congress was not specific about which section it intended as the model for treatment of the stimulus payment. However, the Court may immediately conclude that three of the five sections are inapplicable here.

As to taxes withheld on wages, § 31 provides that "[t]he amount withheld as tax under chapter 24 shall be allowed to the recipient of the income as a credit

against the tax imposed by this subtitle." This section references the amounts withheld from Debtors' income, rather than any amounts refunded. Thus, § 31 does not answer how amounts actually refunded are treated.

Section 33 of the Internal Revenue Code provides for "tax withheld at source on nonresident aliens and foreign corporations". However, the Court presumes that this section is inapplicable in this case because the Act expressly does not apply to "nonresident alien individual[s]." 26 U.S.C.A. § 6428(e)(3)(A). Additionally, the benefits of the Act are available to "eligible individual[s]", rather than corporations. Thus, it seems § 33 would also be inapplicable to the Act. The same is true for § 34, which addresses the treatment of certain uses of gasoline and special fuels not relevant here.

Section 32 addresses the treatment of earned income, which has been held to be exempt as public assistance under Idaho Code § 11–603(4). *Jones, supra.* The holding in *Jones* was followed in three subsequent cases by the Court, *In re Buchanan,* 139 B.R. 721 (Bankr.D.Idaho 1992), *In re Dennett,* 1995 WL 128474 (Bankr.D.Idaho 1995), and *In re Davis,* Case No. 00–41942, Docket No. 33 (Summary Order denying trustee's objection to claim of exemption, dated February 14, 2002.) Thus, if the Court treats the stimulus payment in the same fashion as the earned income credit, as Debtors urge, then their $900 payment is arguably exempt.

On the other hand, § 35 addresses overpayments of tax. This Court has repeatedly held that tax refunds attributable to taxpayer activities occurring prior to the filing of the bankruptcy petition are property of the estate and subject to administration by the trustee. *In re Espinoza,* 03.3 I.B.C.R. 185, 186 (Bankr.D.Idaho

2003); *In re Cain,* 99.3 I.B.C.R. 109, 109 (Bankr.D.Idaho 1999). Accordingly, if Congress intended to treat the stimulus payment as it does overpayments of tax, then Debtors' payment under the Act is not exempt, and should be reachable by Trustee, at least on a prorated basis in the same fashion as tax refunds. *Cain,* 99.3 I.B.C.R. at 109–10 ("Where a portion of the tax refund is attributable to facts or events occurring before the bankruptcy was filed, some sort of equitable apportionment of the resulting refund between the debtor and the bankruptcy estate is appropriate").

Not surprisingly, Debtors contend that Congress intended the stimulus payment to be treated just like the earned income credit, and therefore, Debtors contend the stimulus payment is exempt. Trustee argues that Debtors may not claim their stimulus payment exempt because the payment is based on Debtors' 2007 tax return.

Trustee's argument bears further consideration. It is true that Debtors were eligible to receive the payment because they had earned income of at least $3,000 in 2007. Statement of Financial Affairs, Question 1, Docket No. 1. However, although their eligibility is derived from their earned income in 2007, as well as their filing of a 2007 federal tax return, the right to receive a stimulus check is not based on the 2007 federal tax return as Trustee contends. While this may seem a fine line in Debtors' case, the language of the Act provides that social security payments constitute "qualifying income" for purposes of the Act, but individuals receiving only social security payments may not have to file a federal income tax return. *See* www.irs.gov ("[n]ormally, certain Social Security payments are not subject to income tax. However, the economic stimulus law passed in February contains a special provision allowing Social Security

recipients to count those benefits toward the qualifying income requirement of $3,000 and thereby qualify for the stimulus payment. For eligible Social Security recipients who do not normally file a tax return, the IRS has prepared an 8–page informational package that provides instructions, a sample Form 1040A and a blank Form 1040A—everything needed to file the tax form.").

In addition, the text of the Act also provides:

(g) Advance refunds and credits.—

(1) In general.—Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.

(2) Advance refund amount.—For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such first taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year.

26 U.S.C.A. § 6428(g). The Act, passed by Congress in 2008, was essentially an amendment to a prior tax relief act, the Economic Growth and Tax Relief Reconciliation Act of 2001. The precise text of subsection (g) was codified in the 2001 act under (e)(1)-(2) of 26 U.S.C.A. § 6428 (amended on Mar. 8, 2002 and Feb. 13, 2008). The Ninth Circuit BAP had occasion to interpret that language after a trustee claimed that it defined the refund as one for the prior year's (in that case, 2000) taxes. *Sticka v. Lambert (In re Lambert)*, 283 B.R. 16 (9th Cir. BAP 2002). The BAP disagreed with the trustee, holding that:

Together, the two sections indicate that Congress intended to use an individual's year–2000 tax liability to calculate the amount of his or her Relief Check issued in 2001. Therefore, we agree with the bankruptcy court that Debtors' "2000 tax year provides a template for calculating 2001 benefits, and nothing more." The Act indeed has no effect on the tax liability for year–2000.

*Id.* at 20 (citation omitted).

Given this analysis, it would be inaccurate to say that eligibility for a stimulus payment is based substantively on Debtors' 2007 federal tax return. The 2007 return is but a template in the case of the majority of taxpayers. Moreover, the language of the Act clearly references that the payment "shall be allowed as a credit against the tax imposed . . . for the first taxable year beginning in 2008". 26 U.S.C.A. § 6428(a). Hence, although the filing of a 2007 tax return may represent the vehicle by which most Americans qualified for their payment under the Act, such payment is not directly tied to the 2007 tax return.

In sum, Congress' statement that the stimulus payment should be treated as a refundable credit does not definitively answer, nor particularly clarify, the exemption issue in the context of bankruptcy.

### 3. Income Level Phase–Down.

The third factor to consider under *Dever* and *Steinmetz* is when and at what income levels a credit is phased down or eliminated. The Act does contain income level restrictions for eligible taxpayers, both maximum and minimum. In order to qualify for a payment, an individual must have qualifying income of at least $3,000. 26 U.S.C.A. § 6428(b)(2)(A). Furthermore, the Act provides that the amount of the credit "shall be reduced (but not below

zero) by 5 percent of so much of the taxpayer's adjusted gross income as exceeds $75,000 ($150,000 in the case of a joint return)." 26 U.S.C.A. § 6428(d). Essentially, then, eligible single filers have their stimulus payments reduced after their adjusted gross income exceeds $75,000, and joint filers see a reduction beginning at $150,000.

Given these limitations, the benefits flowing from the Act are not unlimited, and will be unavailable to not only those in upper income brackets, but also to those who have less than $3,000 in earned income, as well as those who have no earned income and receive only disability benefits. *See* 26 U.S.C.A. § 6428(e)(1) (allowing social security benefits to constitute a "qualifying income", but not making the same allowance for disability benefits). In terms of being categorized as "public assistance," this of course cuts both ways: those who constitute the poorest of the poor and receive only disability benefits but do not have to file a tax return are not eligible to receive a stimulus payment, while those who make $149,000 per year, will.

The impact of statutory restrictions providing for a benefit phaseout has been previously considered by this Court in several cases. In *Crampton*, the Court contrasted the earned income credit, which phased out completely for taxpayers with income over $30,580, with the Hope education credit, which did not begin to phase out until the income on a joint return reached $80,000–$100,000.[7] *Crampton*, 249 B.R. at 217. In light of the higher phase-out income level in *Crampton*, the Court concluded that the Hope education credit was "not limited to assisting the working poor". *Id.*

The reasoning in *Dever* was similar. The child tax credit in that case did not

begin to phase out until taxpayers filing a joint return attained income levels of $110,000. *Dever*, 250 B.R. at 706. The Court noted that the $30,850 phase-out level of the earned income credit assured that it could only be claimed "by those debtors occupying the lowest rungs on the economic ladder." *Id.* This Court also noted in *Dever* that while "some debtors taking advantage of the child tax credit will have incomes at the low end of the continuum," others with "middle and even relatively high incomes" could also claim that benefit. *Id.*

This Court again considered the presence of phase-out levels in *Steinmetz* in analyzing the so-called additional child tax credit. That legislation utilized the $110,000 phase out level that the child tax credit employed. The Court stated that the:

> high threshold employed by Congress before the additional child tax credit begins to phase out indicates this credit was meant to apply to large families at a variety of income levels, and that the credit was not targeted to assist only lower-income families. In this important respect, the additional child tax credit is comparable to the education tax credit found by this Court in *Crampton* to be non-exempt.

*Steinmetz*, 261 B.R. at 35.

The same is true in this case. The stimulus checks provided via the Act do not begin to phase out until single filers reach $75,000 and joint filers reach $150,000. Therefore, middle- and some higher-income taxpayers will receive checks just as those with low incomes do. It is also notable that some at the lowest income levels, *i.e.*, those with less than $3,000 in earned income, and those receiving federal disability assistance but who do

---

7. These were the phase-out amounts in 2000, when *Crampton* was decided.

not file income tax returns, will not qualify for the stimulus payment. *See* www.irs. gov (The Internal Revenue Service describes the basic eligibility requirements of the Act as follows: "You have, or your family has, at least $3,000 in qualifying income from, or in combination with, Social Security benefits, certain Veterans Affairs benefits, Railroad Retirement benefits and earned income. Supplemental Security Income (SSI) does not count as qualifying income for the stimulus payment.").

While it is clear that stimulus payments were not intended for those achieving very high incomes, because of the peculiar phase-out and eligibility requirements, the Court can not conclude that the Act was specifically intended to help only lower-income Americans.

In summary, the policy and purpose of the Act does not suggest it was intended to be regarded as public assistance legislation. Furthermore, the Act's payments do not appear to be directed at those occupying the lowest income levels. And, while the tax credit is a refundable credit, the text of the Act is unclear how Congress intended payments to be treated in the bankruptcy context. The Court is persuaded that the stimulus payments are not in the nature of public assistance, and thus are not exempt pursuant to Idaho Code § 11–603(4).

## C. Proration

█ The Court has determined that the stimulus payment is part of Debtor's bankruptcy estate, and that it is not exempt as being in the nature of public assistance. The question now is whether the stimulus payment should be treated as tax refunds are, entitling Trustee to only a prorated share of the funds, or whether Trustee may administer the whole amount for the benefit of Debtors' creditors.

Debtors rely on *Lambert* in support of their position. *Sticka v. Lambert (In re Lambert)*, 283 B.R. 16 (9th Cir.BAP2002); *In re Lambert*, 273 B.R. 887 (Bankr.D.Or. 2001). The Economic Growth and Tax Relief Reconciliation Act of 2001 ("2001 Act"), which was the act at issue in *Lambert*, varied in a number of ways from the Act at issue here, but much of the analysis in *Lambert* is applicable. However, there are other factors which this Court must also consider.

In *Lambert*, the trustee contended that the relief check was a refund for year 2000 taxes, and thus was entirely his to administer, as the debtors in that case filed their petition in 2001. The BAP disagreed, and held that the 2001 Act payments were intended by Congress "to accelerate the year 2001 tax reduction by giving advance payments calculated by year–2000 tax information" and that the "bankruptcy court did not err in concluding that Debtors' Relief Check was intended to be an advance refund for the taxes anticipated for year–2001." *Lambert*, 283 B.R. at 21.

The BAP reached its conclusion in *Lambert* on three grounds, all of which are applicable here. First, the Act here clearly references tax year 2008, and, as has been discussed previously, is not specifically tied to 2007 tax liability. Second, *Lambert* noted that the 2001 Act provided for a "credit" against income taxes "beginning in 2001" in a specified amount. *Lambert*, 283 B.R. at 19. The Act at issue here invokes a similar scheme. It also provides for a "credit" against income taxes "beginning in 2008". 26 U.S.C.A. § 6428. Third, the BAP relied on the section of the statute providing for "Advance Refunds of Credit Based on Prior Year Data", quoted and discussed previously in section III(B)(2) of this decision, to conclude that the 2001 Act "indeed has no effect on the tax liability for year–2000". *Lambert*, 283 ·

B.R. at 20. This Court may employ the reasoning and holding in *Lambert* and similarly conclude that the Act of 2008 has no effect on the tax liability for 2007. Thus, the stimulus payment cannot be considered as a tax rebate for 2007.

> The *Lambert* court concluded that the: "Advance refund amount" is just that: an "amount that is calculated by reference to year 2000, not an actual 'refund' payable on account of year–2000. As stated above, the amount that 'would have' been payable if the [2001] Act had applied to year–2000, and the corresponding amount that would have been refunded in that year, are simply used to calculate the amount of the Relief Check issued *in anticipation of a year–2001 refund*".

*Id.* (emphasis supplied). *Lambert* held that the relief checks were essentially advance refunds and allowed the trustee to administer a prorated amount.

The Act at issue here appears likewise to be an advance refund issued "in anticipation of a year-[2008] refund." However, it would be nonsensical for the Court to consider payments made under the Act to be advance payments on 2008 tax refunds, when individuals who are not required to even file an income tax return—and are thus not eligible for tax refunds—may receive a stimulus payment under the Act. It is notable that the 2001 Act had no qualifying income restriction. 26 U.S.C.A. § 6428(c) (amended on Mar. 8, 2002 and

Feb. 13, 2008) ("eligible individual" was defined as "any individual" *other* than an estate or trust, any nonresident alien individual, and individuals whose personal exemptions for the purposes of tax deductions were allowable to another taxpayer) (emphasis supplied). Thus, under the 2001 Act, the credits were available to virtually all taxpayers. Here, the stimulus payments are likewise available to virtually all taxpayers, but also to those others who do not pay taxes.

In addition, the Internal Revenue Service has answered taxpayer's questions regarding the credit and stated that "the stimulus payment will not reduce your refund or increase the amount you owe when you file your 2008 return". www.irs.gov. In other words, for tax purposes, the IRS does not consider stimulus payments to be refunds paid in advance. In that event, it would not behoove this Court to treat the stimulus payment as such.

The Court holds that the Debtors' stimulus payment is property of the estate. That payment was not an advance tax refund, and thus is not subject to proration. Trustee is entitled to recover and administer the full amount of the stimulus payment as property of Debtors' estate.

### Conclusion

Debtors' stimulus payment is property of their bankruptcy estate. And adhering to the teachings of its prior decisions, that stimulus payment is not exempt as public assistance under Idaho Code § 11–603(4).[8]

---

**8.** There is precious little case law from other districts concerning the status of stimulus payments under their exemption schemes. However, the few decisions existing appear to be in accord. *See In re Alguire,* 391 B.R. 252 (Bankr.W.D.N.Y.) (stimulus act payments are exempt only if debtors have the cash exemption available to them, which in New York state, is limited to cash in the bank on the petition date); *In re Smith,* 393 B.R. 205, 2008 WL 4000175 (Bankr.S.D.Ind.2008) (Au-

gust 28, 2008) and *In re Lacy,* 2008 WL 4000176 (Bankr.S.D.Ind.2008) (August 28, 2008) (stimulus payment is part of bankruptcy estate and all non-exempt portions must be turned over to trustee); *In re Campillo,* 2008 WL 2338316 (Bankr.D.Ariz.) (June 6, 2008) (stimulus payments are not exempt under the Act or any other federal or state law). In a slightly different context, other courts have also held that stimulus payments are disposable income which is to be submitted to the

In addition, the payment is not an advance on 2008 tax refund. Therefore, Trustee may administer the entire stimulus payment for the benefit of Debtors' creditors. The Court will issue a separate order.

trustee in chapter 13 cases, but may be retained by debtors upon a showing that the money is necessary to cover costs not contemplated in the plan. *See In re Matsen,* 391 B.R. 847 (Bankr.N.D.Iowa 2008); *In re Wistey,* 2008 WL 3087346 (Bankr.N.D.Iowa) (June 25, 2008). *But see In re Leisky,* Case no. 08–70618 (C.D.Ill.), Docket No. 53 (order for turnover of stimulus payment denied without analysis).