No. 126,356

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN ALAN MACOMBER,
*Appellant*,

v.

STATE OF KANSAS and JEFF ZMUDA, SECRETARY OF CORRECTIONS, et al.,
*Appellees*.

SYLLABUS BY THE COURT

1.

An inmate's COVID-19 economic stimulus payments are not "government benefits" exempt from a forced savings account under the Kansas Department of Corrections' Internal Management Policy and Procedure (IMPP) 04-103A.

Appeal from Shawnee District Court, LORI D. DOUGHERTY-BICHSEL, judge. Submitted without oral argument. Opinion filed December 15, 2023. Affirmed.

*Stephen Alan Macomber*, appellant pro se.

*Fred W. Phelps, Jr.*, deputy chief legal counsel, of Kansas Department of Corrections, for appellees.

Before MALONE, P.J., GARDNER and CLINE, JJ.

GARDNER, J.: In 2021, Stephen Alan Macomber, a prisoner at the El Dorado Correctional Facility, was sent funds from the United States Department of the Treasury under various COVID-19 pandemic relief acts passed by the United States Congress. When the prison received those funds, it diverted one tenth of their amount into Macomber's forced savings trust account which Macomber cannot access until he is released from prison. Macomber then filed a pro se Petition to Remedy a Breach of Trust

1

seeking to get those funds out of forced savings. The State of Kansas responded by moving to dismiss the petition and the Shawnee County District Court granted that motion, giving rise to this appeal. After careful review, we affirm the dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

At the height of the COVID-19 pandemic, the United States Congress enacted three pieces of legislation aimed at blunting the pandemic's potential fallout. First, in March 2020, it enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES), which provided funds up to $1,200 to all citizens, permanent residents, and qualifying resident aliens. 26 U.S.C. § 6428(a)(1). Second, in December 2020, Congress enacted the Consolidated Appropriations Act (CAA), which provided funds up to $600. 26 U.S.C. § 6428A(a)(1). Third, in March 2021, Congress passed the American Rescue Plan Act (ARPA), which provided funds up to $1,400. 26 U.S.C. § 6428B(a), (b)(1). We refer to these collectively as the COVID-19 economic stimulus payments. In 2021, Macomber received two deposits totaling $3,200 from the United States Department of the Treasury from these three COVID-19 relief acts.

On behalf of Macomber and other inmates, the Kansas Department of Corrections (KDOC) maintains "forced savings" accounts. These accounts are set up as a trust and are regulated under the Kansas Uniform Trust Code, K.S.A. 58a-101 et seq. See K.S.A. 58a-102; K.S.A. 75-5211(c)(1); IMPP 04-103A, p. 1. The KDOC's Internal Management Policy and Procedure (IMPP) defines forced savings as a "savings account in which 10 percent of incoming monies less any outstanding obligations is deposited and maintained until the resident's release from custody." IMPP 04-103A, p. 1. Under this forced savings procedure, KDOC deposited $320 of the $3,200 that Macomber received from the COVID-19 economic stimulus payments into Macomber's forced savings account.

Macomber filed grievances about this with the KDOC. When those failed, he filed suit in the district court alleging a breach of trust under K.S.A. 58a-101 et seq., arguing that the stimulus money was a "government benefit" exempt from forced savings under IMPP 04-103A. The State responded by moving to dismiss Macomber's petition, arguing that the COVID-19 economic stimulus payments were not exempt from forced savings.

The district court held a hearing on the State's motion to dismiss. Although we have no transcript of this hearing in the record on appeal, we see from the district court's register of actions that the parties, including Macomber, appeared via Zoom and that the May 2022 version of IMPP 04-103A was admitted into evidence. The parties agreed that this IMPP was substantively the same as the version in effect when the forced savings of Macomber's COVID-19 economic stimulus payments occurred.

The district court granted the State's motion to dismiss Macomber's petition. It held that the KDOC had the authority to withhold 10 percent of the COVID-19 economic stimulus payments to Macomber because that money was an advanced tax credit and not an exempt "government benefit." Additionally, the district court held that Macomber had not lost the $320 because it would be returned to him under K.S.A. 58a-801 and K.S.A. 2022 Supp. 58a-802 upon his release from incarceration.

Macomber timely appeals, raising solely a question of statutory interpretation and no constitutional issues.

DID THE DISTRICT COURT ERR IN DISMISSING MACOMBER'S PETITION?

Macomber argues that the KDOC mismanaged his trust account (his forced savings account) under the Kansas Uniform Trust Code by subjecting an exempt government benefit to forced savings under IMPP 04-103A. The Code places a duty on a trustee to administer a trust "in good faith, in accordance with its terms and purposes and

3

the interests of the beneficiaries, and in accordance with this code." K.S.A. 58a-801. The Code further requires a trustee to "administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries." K.S.A. 2022 Supp. 58a-802(a).

Resolution of this substantive issue involves interpretation of several statutes, which presents a question of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). When interpreting statutes or regulations, we apply the fundamental rule of statutory construction that the intent of the Legislature governs if that intent can be determined. To ascertain legislative intent, we give common words their ordinary meaning. *John Doe v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). "Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017).

And the procedural posture of the case compels a similar standard of review. "Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review." *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). We view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition demonstrate the plaintiff does not have a claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019); see K.S.A. 2022 Supp. 60-212(b)(6).

The Kansas Legislature authorized the Secretary of Corrections to implement a forced savings account program for inmates' compensation. See K.S.A. 75-5211(b). That statute provides that the Secretary "shall establish programs . . . for withdrawing amounts from the compensation paid to inmates from all sources." K.S.A. 75-5211(b). Although

the district court relied on this statute, the COVID-19 economic stimulus payments are not "compensation," as Macomber did not receive them in return for services rendered. See Black's Law Dictionary 354 (11th ed. 2019) (defining compensation as "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages"). Neither party points to a statute authorizing the KDOC to withdraw any amount from funds inmates receive that are not compensation.

Instead, both parties rely on a regulation—IMPP 04-103A. Kansas has promulgated regulations for its administration of the KDOC, and administrative regulations adopted in accordance with the procedures set forth by the Legislature have the force and effect of law. K.S.A. 77-425; *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 320, 291 P.3d 1056 (2013). Neither party challenges the validity of IMPP 04-103A, so we consider it to be valid.

This regulation defines "Forced Savings" as "[a] savings account in which 10 percent of incoming monies less any outstanding obligations is deposited and maintained until the resident's release from custody." IMPP 04-103A. The IMPP requires the prison to divert 10 percent of all funds an inmate receives from outside the facility into forced savings except for child support payments, government benefits, and money from certain state property claims. IMPP 04-103A.VI.A.

The parties tacitly agree that the COVID-19 payments were funds that inmate Macomber received from outside the facility. The parties dispute only whether those funds are "[g]overnment benefits." See IMPP 04-103A.VI.A. That term is not defined in IMPP 04-103A.

We find some guidance, however, in another regulation which prohibits certain government benefits from being used to pay an inmate's fines, fees, or payments:  "No resident funds shall be subjected to collection for fines, fees or payments if those funds

were accrued from any of the following sources: 1. Social security benefits; 2. Veterans' Administration benefits; or, 3. Workers' compensation benefits paid to the resident garnishee." IMPP 04-106A.II.D.

Under this regulation, funds paid by social security, Veterans Administration, and workers compensation are each stated to be "benefits," and since they are paid by the government, they are "[g]overnment benefits." See IMPP 04-106A.II.D.; IMPP 04-103A.VI.A. Thus those funds cannot be used for fines, fees, or payments. And because those funds are government benefits, in addition to being exempt from being used to pay an inmate's fines, fees, or payments under IMPP 04-106A, they are also exempt from forced savings under IMPP 04-103A.

We next look to the statutes that authorized Macomber's receipt of the COVID-19 economic stimulus payments to determine whether they are similarly "government benefits." All three statutes style the COVID-19 economic stimulus payments as advances of a credit toward income tax refunds. 26 U.S.C. § 6428(a)(1) states "[i]n the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2020 an amount equal to the sum of . . . $1,200." Likewise, 26 U.S.C. § 6428A(a)(1) states "in the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2020 an amount equal to the sum of . . . $600." Similarly, 26 U.S.C. § 6428B(a) states "there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2021 an amount equal to the 2021 rebate amount determined for such taxable year." 26 U.S.C. § 6428B(b)(1) elaborates, in pertinent part, "the term '2021 rebate amount' means, with respect to any taxpayer for any taxable year, the sum of . . . $1,400." The plain language of these statutes shows that the disputed COVID-19 relief money is a tax credit.

So is a tax credit a "[g]overnment benefit" as that term is used in IMPP 04-103A.VI.A.? A "tax credit" is "[a]n amount subtracted directly from one's total tax liability, dollar for dollar, as opposed to a deduction from gross income." Black's Law Dictionary 1762 (11th ed. 2019). Described differently, "[a] tax credit is the public sector equivalent of a coupon; it reduces the amount that is otherwise owed." *United States v. Hoffman*, 901 F.3d 523, 538 (5th Cir. 2018). On the other hand, a "benefit" is defined as "[f]inancial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." Black's Law Dictionary 194 (11th ed. 2019). See Government benefits, https://www.usa.gov/benefits (including retirement benefits, TANF, food stamps, Medicaid and CHIP, and survivor benefits).

Arguably, the COVID-19 economic stimulus payments were financial assistance from a public program in time of sickness or unemployment, within the broadest definition of government benefits. But they were not funds sent to Macomber individually to assist *him* with his sickness or unemployment, or after he qualified for government financial assistance, unlike social security benefits, Veterans Administration benefits, or workers compensation benefits. Rather, the COVID-19 economic stimulus payments were paid to all qualifying citizens, permanent residents, and resident aliens, and were paid regardless of that person's need or their qualification for assistance, as the district court aptly explained:

> "A tax credit or advanced tax refund is arguably not the same as a benefit derived under, for example, the Temporary Assistance for Needy Families (TANF) or Social Security Disability Insurance (SSDI) programs, which both maintain strict eligibility requirements. In contrast to these needs-based programs, stimulus monies were paid to all citizens, permanent residents, and qualifying resident aliens, according to the IRS. Those earning above a set threshold received less money, but they still maintained their eligibility. So, while typical government benefit programs are arguably aimed at shoring up a low-income or disabled person's safety net, *stimulus* payments are designed to

*stimulate* the economy. See *In re Arthur*, No. 09-04332-ALS7, 2010 WL 4674450, at *4 (Bankr. S.D. Iowa Oct. 20, 2010) (primary motive for 2008 stimulus payment was to stimulate the economy during a recession); see also *In re Wooldridge*, 393 B.R. 721, 728 (Bankr. D. Idaho 2008) (same)."

We agree with this reasoned analysis. The COVID-19 economic stimulus payments to Macomber are not "government benefits" as that term is used in IMPP 04-103A.VI.A., or as included in IMPP 04-106A.II.D. Rather, they are tax credits designed to stimulate the economy.

"[T]he very name 'COVID-19 economic stimulus payments' suggests that the payments were intended to stimulate the economy by providing additional money for consumer spending rather than establish a government-sponsored program akin to public assistance. *See* Benjamin Curry, Korrena Bailie, *What Is Fiscal Stimulus? How Does It Work?,* Feb. 19, 2022, https://www.forbes.com/advisor/personal-finance/fiscal-stimulus-packages ('Direct Subsidies—aka Stimulus Checks[:] Perhaps the most effective means of providing fiscal stimulus is via direct payments to citizens. Give a person money, and chances are they'll spend it on something, so the theory goes'). Indeed, '[o]ne of the cornerstones of the CARES Act were the much-lauded stimulus checks[.]' *Id.* While I recognize that many recipients used the COVID-19 economic stimulus payments on household expenses, that reality does not transform the stimulus payments into public assistance." *Groff v. Groff*, No. 956 MDA 2021, 2022 WL 1641002, at *11 (Pa. Super. Ct. 2022) (unpublished opinion) (Bowes, J., dissenting).

Thus, under the authority of IMPP 04-103A, KDOC properly deposited "10 percent of incoming monies" from the COVID-19 economic stimulus payments into Macomber's forced savings account and can maintain it until his release from custody.

Because the allegations in the petition demonstrate that Macomber does not have a claim, we affirm the district court's decision to dismiss Macomber's petition.

Affirmed.